Ignacio Berríos Carrasquillo, demandante-apelante-apelado, *v.* Antonio Grillo Santiago y su esposa Isabel Alvarez Arias, demandados-apelados-apelantes.

No. 4365.—*Sometido:* Noviembre 8, 1928. *Resuelto:* Enero 18, 1929.

*E. Rincón* y *L. Muñoz Morales*, abogados del apelante-apelado; *González Fagundo* y *González Jr.*, abogados de los apelados-apelantes.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El artículo 1126 del Código Civil dispone lo siguiente:

"Puede hacer el pago cualquiera persona, tenga o no interés en el cumplimiento de la obligación, ya lo conozca y lo apruebe, o ya lo ignore el deudor.

"El que pagare por cuenta de otro podrá reclamar del deudor lo que hubiese pagado, a no haberlo hecho contra su expresa voluntad.

"En este caso sólo podrá repetir del deudor aquello en que le hubiera sido útil el pago."

En abril de 1911 Ignacio Berríos Carrasquillo vendió a Antonio Grillo Santiago un condominio pro indiviso en dos parcelas de terreno. En enero de 1912 Grillo y su esposa constituyeron una hipoteca sobre este condominio pro indiviso por la suma de mil cuatrocientos ochenta y cinco dólares ($1,485) pagadera por quintas partes anualmente, venciendo el primer plazo el 31 de diciembre de 1912. Los intereses se pagarían a razón de doce dólares ($12) mensuales y debían rebajarse en proporción a la reducción que sufriera la deuda principal. En diciembre de 1912 se rescindió la escritura de enajenación otorgada en 1911. Grillo y su esposa convinieron en pagar el principal y los intereses arriba mencionados al que resultare dueño del crédito hipotecario.

La hipoteca fué cedida a Félix Arostegui, y por éste a The Plata Tobacco Company.

En noviembre, 1913, Berríos vendió la finca hipotecada a dicha compañía. Al mismo tiempo se canceló la hipoteca al pagar Berríos la suma de mil ciento ochenta y ocho dólares ($1,188) como saldo restante del principal, y ochenta y seis dólares cuarenta centavos ($86.40) de intereses.

En febrero de 1926 Berríos entabló la presente acción para recobrar de Grillo y su esposa la suma de mil doscientos setenta y cuatro dólares cuarenta y dos centavos ($1,274.42) de principal, y mil cuatrocientos setenta y cuatro dólares cuarenta y un centavos ($1,474.41) de intereses, de conformidad con los términos de la hipoteca, más las costas, desembolsos y honorarios de abogado.

La corte de distrito dictó sentencia a favor del demandante por la suma de mil doscientos setenta y cuatro dólares cuarenta centavos ($1,274.40) con intereses al tipo legal desde la fecha de la interposición de la demanda, sin especial condenación de costas. Ambas partes han apelado.

█ Los demandados alegan que la corte inferior erró al declarar que el dinero pagado por Berríos a la Plata Tobacco Company estaba garantizado con la hipoteca constituida en enero de 1912. El demandante, por otra parte, señala como error la exclusión de la sentencia de la suma reclamada por concepto de intereses al tipo convenido sobre la hipoteca otorgada por el demandado. Ambas cuestiones, según han sido presentadas por las partes, dependen de la identidad de la hipoteca a que se hace referencia en la escritura de enajenación y cancelación de hipoteca, otorgada por Berríos y la Plata Tobacco Company en noviembre de 1913.

Ese documento contiene una cláusula que lee así:

"La mencionada participación indivisa se halla afecta a una hipoteca a favor de 'La Plata Tobacco Company' por la suma de mil ciento ochenta y ocho dollars de principal y de trescientos dollars para costas y honorarios de abogado en caso de reclamación judicial, como resto de la constituida por sus anteriores dueños los indicados

esposos Grillo y Álvarez, según consta en escritura otorgada ante mi fe, en fecha cinco de marzo del corriente año de mil novecientos trece.''

El demandante asume que la escritura a que hace referencia el notario, otorgada ante él en marzo de 1913, fué la de la cesión hecha por Arostegui a la Plata Tobacco Company de la hipoteca otorgada por Grillo y su esposa en enero de 1912. En la demanda se alega, y se admitió en la contestación, el hecho de tal cesión, pero no se alega la fecha en que se hizo la cesión, ni aparece de la prueba. Ni de la demanda ni de la prueba aducida se desprende el nombre del notario ante quien se hizo tal cesión.

La teoría de los demandados es que la cláusula en cuestión se refiere a una hipoteca constituida por Berríos o por alguna otra persona o personas desconocidas, en marzo de 1913, ante el mismo notario que redactó la escritura de enajenación y cancelación de hipoteca en noviembre de dicho año. Pero dicha cláusula no dice que la hipoteca a que se hace referencia fué constituida en marzo 5 de 1913, ni que lo fuera por Berríos, a pesar de que nadie más pudo haber constituido en aquella época una hipoteca sobre la citada propiedad. En 1912 Berríos había reconocido expresamente la validez de la hipoteca constituida en enero de dicho año por Grillo y su esposa, y había aceptado la devolución de la finca hipotecada, sujeta a dicho gravamen. No es una sugestión muy plausible que él otorgara una nueva hipoteca en marzo de 1913 sobre la misma propiedad con el fin de garantizar el saldo que adeudaban Grillo y su esposa.

Al hacerse la cesión por Arostegui y después de haberse pagado el primer plazo, la hipoteca otorgada en enero de 1912 por Grillo y su esposa se habría convertido en ''una hipoteca a favor de la Plata Tobacco Company por la suma de mil ciento ochenta y ocho dollars de principal . . . . como resto de la constituida por sus anteriores dueños los indicados Grillo y Álvarez.'' Desde luego, es muy concebible que de haberse presentado durante el juicio la escritura

de marzo 5, 1913, tal vez hubiese revelado la existencia de otra hipoteca sobre la misma propiedad para garantizar la misma obligación, pero la referencia vaga que contiene la escritura otorgada en noviembre de 1913 no establece ese hecho.

Grillo y su esposa constituyeron una hipoteca sobre la finca en enero de 1912. Al devolver la finca a Berríos ellos convinieron expresamente con él en pagarle el montante de dicha hipoteca, así como los intereses de la misma, en las fechas en ellas especificadas. Dicha hipoteca pasó a ser de la Plata Tobacco Company. En noviembre de 1913 Berríos pagó a la Plata Tobacco Company un saldo que se decía deberse sobre una hipoteca que había sido constituida por Grillo y su esposa. Berríos pagó, como saldo del principal, la suma de mil ciento ochenta y ocho dólares ($1,188). El principal garantizado por la hipoteca constituida por Grillo y su esposa en enero de 1912, menos el montante del primer plazo que venció en diciembre de dicho año, era mil ciento ochenta y ocho dólares ($1,188). Los intereses sobre el saldo del principal garantizado por la hipoteca de Grillo, por nueve meses, al tipo convenido, ascenderían a la suma pagada por Berríos como intereses vencidos. La Plata Tobacco Company canceló la hipoteca que fué pagada por Berríos.

Berríos admite que Grillo y su esposa pagaron el primer plazo de la deuda garantizada por la hipoteca constituida en enero de 1912. Nada hay que demuestre que Grillo y su esposa, o cualquiera de ellos, efectuara algún otro pago. No hay base satisfactoria para llegar a la conclusión de que se constituyera alguna otra hipoteca para garantizar la misma obligación. La escritura de enajenación y cancelación de hipoteca no establece la existencia de ningún gravamen que pudiera ser cancelado por la Plata Tobacco Company en noviembre de 1913, a no ser la hipoteca constituida por Grillo y su esposa en 1912, cedida posteriormente por Arostegui a la compañía tabacalera.

Interpretando el lenguaje de la escritura otorgada en 1913 a la luz de los hechos establecidos, la única conclusión satisfactoria parece ser que la hipoteca cancelada por la Plata Tobacco Company fué la constituida por Grillo y su esposa en 1912, y que el dinero pagado por Berríos a la compañía tabacalera era el saldo que Grillo y su esposa debían y que estaba garantizado con esa hipoteca.

De lo que antecede se desprende que la corte inferior no cometió error alguno, según alegan los demandados.

La teoría de los letrados del demandante y apelante de que Berríos tiene derecho a los intereses al tipo especificado si la hipoteca cancelada por la compañía tabacalera era en realidad de verdad la hipoteca que Grillo y su esposa otorgaron en enero de 1912, no ha sido atacada ni en la relación del caso y opinión radicada por el juez sentenciador, ni en el alegato de los demandados-apelantes. Según esa teoría, se desprendería de lo que se ha dicho que la corte inferior cometió error, según alega el demandante, al excluir de la sentencia los intereses al tipo convenido en la hipoteca.

Si Berríos no hubiese pagado la deuda de Grillo ni hubiese dispuesto de la finca hipotecada, entonces esa finca respondería aún tanto del principal como de los intereses, o de lo contrario la hipoteca habría sido ejecutada. Pero no es necesario que resolvamos por ahora que todo dueño de finca hipotecada con el fin de garantizar una deuda con un tercero, que paga la deuda con el fin de liberar la finca de tal gravamen, tiene derecho a percibir intereses al tipo original convenido.

En verdad la enajenación hecha por Berríos a Grillo había sido rescindida más de seis meses antes de haber Grillo y su esposa hipotecado la finca. Berríos, por tanto, no se halla en la posición de un propietario que ha hipotecado su finca para garantizar la deuda de otro, sino más bien en la de un dueño que averigua que su finca, sin su conocimiento o consentimiento, ha sido hipotecada para garanti-

zar la deuda de otro. Tal era la situación reinante cuando al otorgarse la escritura formal de rescisión, Grillo y su esposa convinieron con Berríos en pagar tanto el principal como los intereses de la misma en las fechas indicadas en la hipoteca. Bajo estas circunstancias creemos que Berríos tenía derecho a percibir los intereses sobre la cantidad pagada como principal, al tipo especificado en la hipoteca.

Los demandados también insisten en que la corte inferior cometió error al no sostener la alegación de *res judicata* fundándose en una sentencia de *nonsuit* en un pleito anterior.

Los letrados admiten que el *nonsuit* en cuestión fué dictado por falta de prueba solamente, pero alegan que tal *nonsuit* equivale a una sentencia sobre los méritos del caso. No podemos estar de acuerdo con este punto de vista. Generalmente y de acuerdo con la práctica moderna, ora se dicte voluntaria o involuntariamente, a moción de la parte demandada, un *nonsuit* por falta de prueba no es una sentencia sobre los méritos del caso. 34 C. J. 781, párrafo 1200; id. página 794, párrafo 1213, y nota 44; 15 R.C.L. pág. 984, párrafo 457; 2 Black on Judgments (2da. ed.), pág 1050, párrafo 698; y nota a 49 A.S.R. 829, 831.

Nada hay en el presente caso que lo coloque fuera de la regla general de que una sentencia que no resuelve una acción sobre sus méritos no sostiene la alegación de *res judicata.*

Otra indicación por parte del demandante es que la corte inferior cometió error al no incluir en su sentencia una condena de costas. Pero, según hemos demostrado, el demandante obtuvo en la corte inferior algo menos de la mitad de la cantidad que alegaba se le debía, y de acuerdo con la prueba aducida había amplio campo para discutir si tenía derecho o no a percibir aun parte de la suma reclamada. Bajo estas circunstancias, no estamos dispuestos a alterar la conclusión a que llegó la corte inferior sobre la cuestion de costas.

La sentencia apelada debe ser modificada en el sentido de incluir los intereses al tipo convenido en la hipoteca, en vez de al tipo legal concedido por la corte inferior, *y así modificada se confirma.*

El Juez Asociado señor Texidor no intervino.